August GONZALES, as Administrator of the Estate of Timothy Bourgeois, Deceased, Plaintiff,

v.

GARNER FOOD SERVICES, INC., et al., Defendants.

Civ. A. No. 1:93–CV–1639–JOF.

United States District Court, N.D. Georgia, Atlanta Division.

March 17, 1994.

---

Sharon Nelson Hill, Milton Dale Rowan, Atlanta Legal Aid Society, Atlanta, GA, for plaintiff.

Eric Brandt Reuss, Atlanta, GA, for defendants.

### ORDER

FORRESTER, District Judge.

This matter is before the court on Defendants Garner Food Services, Inc., and Garner Fast Foods, Inc.'s motion to dismiss.[1] Plaintiff Augustus Gonzales, as administrator of the estate of Timothy Bourgeois, filed suit on July 20, 1993, alleging violations of the Employment Retirement Income Security Act (ERISA) and the Americans with Disabilities Act (ADA).

When reviewing a motion to dismiss, a court must take the material allegations of the complaint and its incorporated exhibits as true and liberally construe them in favor of the plaintiff. *Fed.R.Civ.P.* 12(b)(6), 10(c) and 8(f); *Walker Process Equipment v. Food Machinery and Chemical Corp.*, 382 U.S. 172, 174–75, 86 S.Ct. 347, 348–49, 15 L.Ed.2d 247 (1965); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Dismissal is improper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102.

### I. ALLEGED FACTS

Timothy Bourgeois was employed at Hardee's Restaurants, owned and operated by Garner Food Services (GFS), until April of 1991. GFS employed twenty-five or more employees for each working day in each of the twenty or more calendar weeks in 1990 or 1991. GFS also sponsored and administered a group welfare benefit plan in which Mr. Bourgeois participated by virtue of his employment. The benefit plan provided health insurance coverage up to a $1 million lifetime limit.

In February of 1990, while still an employee of GFS, Mr. Bourgeois was diagnosed as having AIDS. As a result of his condition, he sought and received medical treatment and submitted claims for health insurance coverage. As the sponsor and administrator of the plan, GFS corporate officials learned of his condition. As alleged, GFS then discharged Mr. Bourgeois because he had contracted AIDS and to avoid paying his future health insurance claims. Thereafter, Mr. Bourgeois elected and paid the necessary premiums to continue his health insurance benefit coverage.[2]

At least partly because of his continued participation in the health insurance benefit plan after his termination, GFS or its successor in interest, Garner Fast Foods, Inc. (GFF), amended the plan on October 1, 1991, to limit AIDS-related treatment to $10,000 annually with a lifetime maximum limit of $40,000 (AIDS cap amendment). All other physical ailments continued to be covered under the plan up to the lifetime maximum of $1 million with no annual limit. Either prior

---

1. Defendants Willis Corroon Administrative Services Corporation and Willis Corroon Corporation of Georgia also were named in this suit and moved to dismiss. Plaintiff, however, voluntarily dismissed these defendants without prejudice under *Fed.R.Civ.P.* 41(a)(1)(i) on September 7, 1993.

2. The Comprehensive Omnibus Budget Reconciliation Act of 1976 (COBRA) amended the Employment Retirement Income Security Act of 1974 to require employers to allow former employees to elect to continue coverage under the employer's group health insurance plan for up to eighteen months. 29 U.S.C. § 1161.

to this amendment to the plan or shortly thereafter, GFF became the sponsor of Mr. Bourgeois' benefit plan.

Mr. Bourgeois at some point exhausted the benefits available to him under the AIDS cap limit. Thereafter, Defendants refused to pay claims submitted in excess which now total approximately $90,000. On August 27, 1992, Mr. Bourgeois filed a charge with the EEOC alleging that the AIDS cap amendment violated the anti-discrimination provisions of the ADA. On September 6, 1992, Mr. Bourgeois died. His estate assumed the medical debts, and on December 11, 1992, August Gonzales was appointed the administrator of the estate. The EEOC was notified that Mr. Gonzales should be substituted as the charging party. On April 21, 1993, Mr. Gonzales received a notice of right to sue letter from the EEOC.

## II. DISCUSSION

The complaint sounds in two counts. Plaintiff first alleges that Defendants discharged Mr. Bourgeois "because he had made AIDS related claims under the GFS plan and for the purpose of limiting his right to continue making such claims under the plan," in violation of section 510 of ERISA, 29 U.S.C. § 1140. Second, Plaintiff alleges that Defendants' adoption of the AIDS cap amendment discriminated against Mr. Bourgeois on account of his disability in violation of section 102 of Title 1 of the ADA, 42 U.S.C. § 12112.[3] Defendants move to dismiss count two on a number of grounds. For reasons shown below, however, this court grants the motion to dismiss on another ground.

### A. Retroactivity and a Continuing Violation

The amendment to the health insurance benefit plan, which imposed the AIDS cap, was made on October 1, 1991. The ADA as applied in Title 1 to private employers is not retroactive. The Act was enacted on July 26, 1990. 1990 U.S.C.C.A.N. 267. Section 108 of the Act as enacted provides that Title 1 "shall become effective twenty-four months after the date of enactment," in other words July 26, 1992.[4] Courts have uniformly construed this provision to mean that Title 1 applies only to wrongful conduct occurring after that date. *O'Bryant v. City of Midland,* 9 F.3d 421, 422 (5th Cir.1993); *Aramburn v. Boeing Co.,* 1993 WL 544567 *2–3 (D.Kan. December 29, 1993) (citing other district court cases uniformly holding Title 1 as prospective only); *Verdon v. Consolidated Rail Corp.,* 828 F.Supp. 1129, 1140–41 (S.D.N.Y.1993); *see also* 1990 U.S.C.C.A.N. 602 (signing statement of President Bush stating: "[t]hese phase in periods and effective dates will permit adequate time for businesses to become acquainted with the ADA's requirements and to take the necessary steps to achieve compliance."). Plaintiff's claim based on any acts prior to July 26, 1992, therefore, are barred.

Plaintiff, however, has argued that the AIDS cap continued in effect after the effective date and that the continued denial of access to health care benefits after July 26, 1992, until his death on September 6, 1992, are continuing violations and therefore are not time-barred. In determining whether the AIDS cap amendment constitutes a continuing violation, this court must distinguish between the "present consequences of a one-time violation," which would not qualify as

---

**3.** Defendants have also moved to dismiss a claim that the AIDS Cap Amendment to the health insurance benefit plan was discriminatory conduct designed to interfere with the exercise or attainment of any right under ERISA, 29 U.S.C. § 1140. They argue that such a claim is meritless in light of *Owens v. Storehouse, Inc.,* 984 F.2d 394, 398–400 (11th Cir.1993) (affirming this court's holding, 773 F.Supp. 416, 418–20 (N.D.Ga.1991)). This assertion is correct absent a showing of a contractual right found in the benefit plan or evidence of the employer's specific intent to discriminate against the employee.

Plaintiff acknowledges this authority and responds that he has not sought to plead such a claim.

**4.** From July 26, 1992 until July 26, 1994, Title 1 of the Act only applies to employers engaged in an industry affecting commerce who have twenty-five or more employees for each working day for each of twenty or more calendar weeks in the current or preceding calendar year. Thereafter, only fifteen or more employees for each working day are required. 42 U.S.C. § 12111(5)(A).

continuing violations, and "continuation of violations into the present," which would. *Beavers v. American Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir.1992) (quoting *Webb v. Indiana National Bank*, 931 F.2d 434, 438 (7th Cir.1991)). Were this issue determinative, this court would likely find the continued denial of benefits by Defendants under this policy amendment a continuing violation. Because this issue is not determinative, however, this court will only assume for purposes of discussion a continuing violation for the denial of benefits after July 26, 1992.

### B. *Qualified Individual*

■ Plaintiff seeks to recover under Title 1 of the ADA which prohibits discrimination in the employment context. The general rule provides: "[N]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

This court assumes that due to Mr. Bourgeois' right to elect continued coverage under Defendants' benefits plan when he lost coverage as a result of a "qualified event," his discharge falls within the meaning of "other terms, conditions and privileges of employment." 42 U.S.C. § 12111; *see also* 29 U.S.C. §§ 1161(a), 1163(2).[5] The problem with Plaintiff's second claim as alleged, however, is that at the time the AIDS cap

amendment was adopted, Mr. Bourgeois was not an employee of Defendants. In other words, he neither held nor sought to hold a particular position. Rather, he was only a participant and beneficiary by virtue of his status as a former employee.

The legislative history of the ADA makes clear that the definition of a "qualified individual with a disability" is directed towards job applicants and employees. 1990 U.S.C.C.A.N. at 337, 432 & 456.[6] One could argue that Mr. Bourgeois still desired the position after he was discharged, thus falling within the definition of a qualified individual with a disability. Such a construction, however, would be problematical. For instance, use of the word desire outside the job applicant or job promotion context would allow an act of discharge to be turned into a "continuing violation" by virtue of the Plaintiff's continued "desire" for the position. Such a reading would run counter to Title VII and ADEA precedent which holds that a failure to rehire and simple request to be rehired cannot resurrect a simple discharge claim under the 180–day filing requirement for the EEOC. *See Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir.1985). This court, therefore, holds that because Mr. Bourgeois was not a job applicant or an employee at the time of the alleged violations, he cannot prevail on his claim of discrimination as a matter of law. His claim under ERISA, however, still remains.[7]

### III. CONCLUSION

In light of the foregoing discussion, this court finds as follows: Defendants Garner Food Services, Inc., and Garner Fast Foods, Inc.'s motion to dismiss is GRANTED [5–1, 5–2] as to count two of the complaint. Plaintiff August Gonzales', as administrator of the estate of Timothy Bourgeois, motion to file a

---

**5.** It is also undisputed that AIDS is a disability within this meaning of the ADA. 28 C.R.R. §§ 35.104(1)(B)(ii) & 36.104(1)(B)(ii); *United States v. Morvant*, 843 F.Supp. 1092, 1093–94 (E.D.La.1994); *T.E.P. v. Leavitt*, 840 F.Supp. 110, 111 (D.Utah 1993).

**6.** This language is not found in other discrimination statutes but was specifically adopted in this bill to "ensure that employers can continue to require that all applicants and employees, includ-

ing those with disabilities, are able to perform the essential, i.e., the non-marginal functions of the job in question." U.S.C.C.A.N. at 337.

**7.** Of course, absent the effective date problem for Plaintiff, he would certainly have pled a claim for discriminatory discharge under ADA. The fact that this claim is foreclosed in this case is the normal consequence of new legislatively-created causes of action.

corrected pleading is GRANTED [11–1] and was considered. The Clerk of Court is DIRECTED to DISMISS COUNT TWO of the complaint in this action.

SO ORDERED.