**Rehnee AIKENS, Plaintiff,**

v.

**BANANA REPUBLIC, INC., Defendant.**

**Civ. A. No. H–93–3735.**

United States District Court,
S.D. Texas.

March 8, 1995.

---

Robert Wallace, Robert T. Wallace & Associates, Houston, TX, for plaintiff.

Thomas J. Wray, Fulbright & Jaworski, Houston, TX, for defendant.

### MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant Banana Republic, Inc.'s ("Banana Republic") Motion for Summary Judgment (# 11). De-

fendant seeks summary judgment on Rehnee Aikens ("Aikens") claims of discrimination under the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that the defendant's motion for summary judgment should be granted.

## I. *Background.*

On August 27, 1987, Aikens was hired by Banana Republic as a part-time sales associate at its Montrose store location. When the Montrose location closed, Aikens was transferred to the Galleria store. Since 1975, Aikens has suffered from a visual impairment known as macular degeneration, which is a progressive degeneration of the back of the retina that has caused her vision to deteriorate to an acuity of 20/400.

On May 27, 1991, the store manager of Banana Republic, Diane Schmidt ("Schmidt"), promoted Aikens to the position of stockroom manager and increased her pay by fifty cents per hour. Schmidt erroneously classified Aikens as an assistant manager, which allowed her to receive incentive bonuses based on the store's performance. In May 1992, Danielle Teverbaugh ("Teverbaugh") replaced Schmidt as the store manager and discovered that Aikens' job classification had been miscoded by Schmidt. On June 24, 1992, Teverbaugh corrected Aikens' job code to reflect her true job classification—stock person. Although Aikens' job duties and responsibilities did not change after her job classification was corrected, she was no longer entitled to receive incentive bonuses or attend manager meetings. On December 4, 1992, Aikens gave Banana Republic notice that she was resigning her position, effective December 12, 1992.

On January 14, 1993, Aikens filed a charge of discrimination against Banana Republic with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC issued Aikens a right to sue letter, she initiated this action on November 23, 1993. In her original complaint, Aikens alleges handicap discrimination under the ADA in connection with her reclassification to stock person, claiming that it was a demotion. She attached to the complaint a copy of her EEOC charge, which alleges discrimination due to her race—black, as well as handicap discrimination. Aikens recently was granted leave to file a supplemental complaint to add a claim of constructive discharge, in which she contends that she was forced to resign her position in December 1992 due to her demotion in June 1992.

## II. *Analysis.*

### A. *The Applicable Standard.*

■■■ Rule 56(c) provides that "[summary] judgment ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to its case on which it bears the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## B. *Americans with Disabilities Act.*

### 1. *Effective Date.*

In this case, Aikens alleges she was demoted from the position of assistant manager to stock person in violation of the ADA. Although the ADA was enacted on July 26, 1990, Congress delayed its effective date as applied to private employers until July 26, 1992. 42 U.S.C. § 12112 (1993). As stated by President Bush in enacting the ADA, "These phase-in periods and effective dates will permit adequate time for businesses to become acquainted with the ADA's requirements and to take the necessary steps to achieve compliance." Americans with Disabilities Act, Pub.L. 101–336, Signing Statement, 1990 U.S.C.C.A.N. at 602. The legislative history of the ADA is devoid of language that would support the retroactive application of the Act. *R.G.H. v. Abbott Lab.*, No. 93 C 4361, 1995 WL 68830, at *8 (N.D.Ill. Feb. 16, 1995). Moreover, applying the ADA retrospectively would completely undermine the express purpose of the grace period that was purposefully built into the Act. *Id.* Accordingly, courts have uniformly construed the Act to apply only to wrongful conduct occurring after July 16, 1992. *O'Bryant v. City of Midland*, 9 F.3d 421, 422 (5th Cir. 1993); *R.G.H.*, 1995 WL 68830, at *8; *Gonzales v. Garner Food Servs.*, 855 F.Supp. 371, 373 (N.D.Ga.1994); *Daniels v. Allied Elec. Contractors*, 847 F.Supp. 514, 516 (E.D.Tex. 1994); *Aramburu v. Boeing Co.*, No. 93–4064–SAC, 1993 WL 544567, at *2–3 (D.Kan. Dec. 29, 1993).

Aikens' job was reclassified on June 24, 1992. If any alleged violation occurred, it was more than one month prior to the ADA taking effect. Thus, Aikens' handicap discrimination claim based upon her alleged demotion is not actionable under the ADA. Moreover, because Aikens' constructive discharge claim is founded upon her alleged demotion, it likewise is not actionable under the ADA.

### 2. *Prima Facie Case of Handicap Discrimination.*

Furthermore, without regard to the effective date of the ADA, Aikens' claims are barred because she has not established a *prima facie* case of handicap discrimination.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The ADA further defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2).

To recover under this statute, Aikens must prove that she was discriminated against on the basis of her disability. *R.G.H.*, 1995 WL 68830, at *9. To do so, she may either present direct or circumstantial evidence of disability discrimination or may employ the indirect method of proof utilized by the courts in other types of discrimination cases. *Id.* Although the case law is scant regarding the ADA, especially within the Fifth Circuit, the few courts that have addressed claims brought under the Act have looked to Title VII and the Rehabilitation Act to provide guidance as to the elements which constitute a *prima facie* case of disability discrimination. *Aucutt v. Six Flags Over Mid–America, Inc.*, 869 F.Supp. 736 (E.D.Mo.1994); *see R.G.H.*, 1995 WL 68830 at *9; *Grinstead v. Pool Co.*, No. 93–2320, 1994 WL 25515, at *2 (E.D.La. Jan. 20, 1994).

To state a *prima facie* case under the ADA, the plaintiff must show that: (1) she suffers from a "disability;" (2) she is a "qualified individual;" (3) she was subject to an adverse employment action; and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. *See R.G.H.*, 1995 WL 68830, at *9; *Aucutt*, 869 F.Supp. at 743; *see also White v. York Int'l Corp.*, 45 F.3d 357, 360

(10th Cir. Jan. 5, 1995); *Rogers v. International Marine Terminals, Inc.,* No. 94–0056, 1995 WL 16787, at *3 (E.D.La. Jan. 17, 1995); *Stradley v. Lafourche Communications, Inc.,* 869 F.Supp. 442, 443 (E.D.La. 1994) (citing *Chandler v. City of Dallas,* 2 F.3d 1385, 1390 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) [Rehabilitation Act]); *Elstner v. Southwestern Bell Tel. Co.,* 659 F.Supp. 1328, 1345 (S.D.Tex.1987), *aff'd,* 863 F.2d 881 (5th Cir.1988) [Texas Commission on Human Rights Act]. If the plaintiff succeeds in making this *prima facie* showing, a rebuttable presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate, non-discriminatory justification for its actions. *R.G.H.,* 1995 WL 68830, at *9 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981)); *Grinstead,* 1994 WL 25515, at *2. If the employer meets its burden of production, the presumption is dissolved and the burden shifts back to the plaintiff to prove that the proffered reasons are a pretext for discrimination. *R.G.H.,* 1995 WL 68830, at *9; *Grinstead,* 1994 WL 25515, at *2. As with discrimination cases generally, the plaintiff at all times bears the ultimate burden of persuading the trier of fact that she has been the victim of illegal discrimination based on her disability. *White,* 45 F.3d 357 at 361 (citing *St. Mary's Honor Ctr. v. Hicks,* —— U.S. ——, ———— ——, 113 S.Ct. 2742, 2747–49, 125 L.Ed.2d 407 (1993)).

■ In the instant case, Aikens has not adduced sufficient evidence to establish a *prima facie* case under the ADA. Aikens has not brought forward any evidence to show that she was treated less favorably than other employees, was replaced by a non-disabled person, or was otherwise discriminated against due to her handicap. Aikens' only claim of discrimination is her alleged demotion from assistant manager to stock person. In her deposition, Aikens stated that when Teverbaugh assumed store manager duties, she informed Aikens that she had been mistakenly coded with an assistant manager's title instead of the appropriate stockroom title. When asked if she had

any reason to believe that the coding was anything but a mistake, Aikens responded, "No I do not." Aikens conceded at deposition that her job responsibilities and hourly pay did not change once the clerical mistake was discovered. She was simply no longer eligible for incentive bonuses because her classification was not that of an assistant manager, as she had no sales duties. Aikens has not produced any evidence indicating that her job reclassification was based on her visual impairment or that her classification as an assistant manager in the first instance was not simply a mistake. In fact, Aikens admitted at deposition that she was never criticized because of her job performance and conceded that no one at Banana Republic ever indicated her job was in any danger due to her disability. Thus, no inference can arise that her alleged demotion was based on her disability.

■ In addition, Banana Republic has met its burden of demonstrating a legitimate non-discriminatory reason for Aikens' job reclassification. Banana Republic has produced sufficient evidence, which is unrefuted by Aikens, that the original coding of her position as that of an assistant manager was a mistake and her subsequent reclassification was merely a correction of the prior error. Hence, Aikens has failed to establish a *prima facie* case of handicap discrimination, much less rebut Banana Republic's articulated, non-discriminatory reason for its actions.

### C. *Title VII of the Civil Rights Act.*

#### 1. *Claim Not Included in the Complaint.*

■ Aikens contends in her reply in opposition to Banana Republic's motion for summary judgment that she has raised a claim of race discrimination under Title VII. Although Aikens alleged race discrimination in her EEOC charge, she failed to include such a claim in her original complaint. In paragraph six of her complaint, Aikens did not check race in the appropriate box as a basis for her discrimination claim. Instead, she wrote in the word "handicap," stating that defendant "[d]emoted plaintiff in violation of the Americans With Disabilities Act." Aikens never sought leave to amend her

complaint to include a race discrimination claim. Although she was *pro se* at the time of her original filing, she has been represented by counsel since March 18, 1994, when the parties filed their Joint Discovery/Case Management Plan. Thus, for almost a year, even with the assistance of counsel, Aikens has not alleged race discrimination in this action. Indeed, it was mentioned for the first time in her reply to the defendant's motion for summary judgment.

Under FED.R.CIV.P. 8(a)(2), the plaintiff must set forth a "short and plain statement" of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957). Because Aikens never amended her complaint to include a claim of race discrimination under Title VII, Banana Republic has not been afforded the "fair notice" required under Rule 8(a)(2).

### 2. *Prima Facie Case of Race Discrimination.*

Moreover, without regard to Aikens' failure to amend her complaint, Aikens' claims are barred because she has not established a *prima facie* case of race discrimination.

In order to establish a *prima facie* case of race discrimination, the plaintiff must show: (1) she is a member of a protected group; (2) she was qualified for the position; (3) an adverse employment action occurred; and (4) she was replaced by a person not in the protected group. *St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2747; *Burdine,* 450 U.S. at 252–53, 101 S.Ct. at 1093–94; *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). Alternatively, she may establish a *prima facie* case by showing that she is a member of a protected class, she was qualified for the position, and persons outside the protected class were treated more favorably than she. *Waggoner v. City of Garland,* 987 F.2d 1160, 1163 (5th Cir.1993); *Johnson v. Chapel Hill Indep. School Dist.,* 853 F.2d 375, 381 (5th Cir.1988); *Thornbrough v. Columbus & Greenville R. Co.,* 760 F.2d 633, 639 (5th Cir.1985). At all times, the plaintiff has the ultimate burden to prove race discrimination. *St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2747.

Once the *prima facie* case is established, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Id.; McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. If the employer meets its burden, the *prima facie* case is dissolved and the burden shifts back to the plaintiff to establish that the reason proffered by the employer is merely a pretext for race discrimination. *Id.; Rhodes v. Guiberson Oil Tools,* 39 F.3d 537, 542 (5th Cir.1994); *Marcantel v. Department of Transp. & Dev.,* 37 F.3d 197, 200 (5th Cir.1994). To demonstrate a "pretext for discrimination," the plaintiff must show both that the employer's proffered reason was false and that race discrimination was the real reason. *See St. Mary's Honor Ctr.,* —— U.S. at ——, 113 S.Ct. at 2752; *Rhodes,* 39 F.3d at 542.

An employee's own subjective belief of race discrimination, however genuine, cannot be the basis for judicial relief. *Little v. Republic Refining Co.,* 924 F.2d 93, 96 (5th Cir.1991); *Sherrod v. Sears, Roebuck & Co.,* 785 F.2d 1312, 1316 (5th Cir.1986); *Elliott v. Group Medical & Surgical Serv.,* 714 F.2d 556, 567 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2658, 81 L.Ed.2d 364 (1984). Although Title VII protects employees against racial discrimination in the terms and conditions of employment, it does not afford minorities special preference or place upon the employer an affirmative duty to accord them special treatment. *See Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982).

In the instant case, Aikens has not brought forward any evidence to show that her reclassification was due to her race, that other similarly situated persons of different races were not reclassified, or that she was replaced by someone outside of the protected class. Aikens' alleged demotion consisted simply of Banana Republic's store manager, Teverbaugh, correcting the store records to indicate her true classification as a stock person rather than as an assistant manager.

Aikens was informed of the error in her classification and admitted at deposition that she had no reason to believe that it was anything other than a mistake. Aikens has presented no evidence suggesting that her reclassification was due to her race, nor has she provided any evidence to rebut Banana Republic's legitimate, non-discriminatory reason for the reclassification. Additionally, Aikens has not established that she was replaced by a person of another race after her resignation or that non-black employees were treated more favorably than she. In Aikens' deposition, she admitted that she did not know if anyone had replaced her as the stock person. Thus, Aikens has not established a *prima facie* case of race discrimination with respect to either her demotion or her discharge claim.

### D. *Constructive Discharge.*

In her supplemental complaint, Aikens alleges that she was constructively discharged from Banana Republic. A constructive discharge occurs when the employer makes the employee's working conditions so intolerable that the employee is forced to resign. *Junior v. Texaco, Inc.,* 688 F.2d 377, 378 (5th Cir.1982); *Young v. Southwestern Sav. & Loan Ass'n,* 509 F.2d 140, 144 (5th Cir.1975). To determine whether a constructive discharge has occurred, the plaintiff's actions must be analyzed from the standpoint of a "reasonable employee." The working conditions must have been "so difficult or unpleasant that [a] reasonable person in [the plaintiff's] shoes would have felt compelled to resign." *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 741 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994) (citing *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 242 (5th Cir.1993)). The plaintiff's actions must be evaluated objectively, without regard to the "employee's subjective preference for one position over another." *Epps v. NCNB Texas,* 7 F.3d 44, 46 (5th Cir.1993) (citing *Jett v. Dallas Indep. Sch. Dist.,* 798 F.2d 748, 755 (5th Cir.1986), *remanded in part on other grounds,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)).

In this case, Aikens has not demonstrated the requisite intolerable working conditions. The working conditions must be viewed objectively by examining the conditions imposed by Banana Republic, not by viewing Aikens' state of mind. *Shawgo v. Spradlin,* 701 F.2d 470, 481 n. 12 (5th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983). At deposition, Aikens claimed that she left Banana Republic because she was under "pressure" from Teverbaugh, the store manager. Aikens, however, could cite no specific instances of "pressure" that made her employment so intolerable that she was forced to resign. Aikens further admitted that everyone in the store was under "pressure" from Teverbaugh and she was not singled out as the sole recipient of the "pressure." In such situations, where all employees are treated identically, "no particular employee can claim that difficult working conditions signify the employer's intent to force that individual to resign." *Bristow v. Daily Press, Inc.,* 770 F.2d 1251, 1255 (4th Cir.1985), *cert. denied,* 475 U.S. 1082, 106 S.Ct. 1461, 89 L.Ed.2d 718 (1986) (citing *Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1256 (8th Cir.1981)).

Aikens has not shown that Teverbaugh criticized her unduly. In fact, according to Aikens, Teverbaugh never indicated she was unhappy with Aikens or suggested that her job was in jeopardy. Instead, the only criticism Aikens recalled was being "nitpicked" by Teverbaugh. This "nitpicking" incident allegedly occurred when Teverbaugh performed some of Aikens' job duties of checking in part of a shipment. Aikens, however, later admitted at deposition that this incident did not really bother her. In any event, the mere fact that Aikens experienced "pressure" or was "nitpicked" does not establish such intolerable working conditions as to give rise to a constructive discharge. As the United States Court of Appeals for the Fourth Circuit noted:

> Every job has its frustrations, challenges, and disappointments; these inhere in the nature of work. An employee is protected from a calculated effort to pressure him into resignation through the imposition of unreasonably harsh conditions, in excess of

those faced by his co-workers. He is not, however, guaranteed a working environment free of stress.

*Bristow,* 770 F.2d at 1255.

■ Aikens cannot prevail on a constructive discharge claim based on her alleged demotion if the working conditions in her new position were not so intolerable that a reasonable employee would have resigned. *Boze v. Branstetter,* 912 F.2d 801, 806 (5th Cir.1990). Demotions alone do not give rise to a viable constructive discharge claim. *See Jurgens v. EEOC,* 903 F.2d 386, 391 (5th Cir.1990). The Fifth Circuit noted in *Jurgens* that a "slight decrease in pay coupled with some loss of supervisory responsibilities is insufficient to constitute a constructive discharge." *Id.* at 392. When the humiliation and embarrassment of demotion are not significant, there can be no claim of constructive discharge. *Id.* at 391.

Here, upon her reclassification, Aikens' working conditions were not so difficult or unpleasant that she had no choice but to resign. In fact, Aikens' job responsibilities did not change when her title was reclassified to that of stock person. Moreover, she does not claim that she suffered any humiliation or embarrassment from being reclassified. Indeed, at deposition, Aikens conceded that she chose to resign from her position with Banana Republic only after confirming with the Texas Commission for the Blind that resigning her employment would not affect her eligibility for additional schooling. Aikens has not described any working conditions that would be considered intolerable by a reasonable person, nor has she demonstrated that she was reasonable in resigning from Banana Republic. Hence, Aikens has failed to show that she was constructively discharged from Banana Republic.

E. *Damages.*

■ Finally, Aikens has not demonstrated that she has been damaged as a result of her alleged demotion or constructive discharge. Upon her resignation from Banana Republic, Aikens, like any other claimant, was under a duty to mitigate her damages. *See Ford Motor Co. v. EEOC,* 458 U.S. 219, 231–32, 102 S.Ct. 3057, 3065–66, 73 L.Ed.2d 721 (1982); *Sellers v. Delgado College,* 902 F.2d 1189, 1193 (5th Cir.), *cert. denied,* 498 U.S. 987, 111 S.Ct. 525, 112 L.Ed.2d 536 (1990); *Hansard v. Pepsi–Cola Metro. Bottling Co.,* 865 F.2d 1461, 1468 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). In order to recover damages, Aikens was obligated to exercise reasonable diligence in seeking employment substantially equivalent to the position lost. *See Ford Motor Co.,* 458 U.S. at 231–32, 102 S.Ct. at 3065–66; *Sellers,* 902 F.2d at 1196.

After resigning from Banana Republic on December 12, 1992, however, Aikens has not sought or attempted to seek a new paying job. Instead, she has chosen to do volunteer work. Because Aikens has not reasonably or diligently sought employment substantially equivalent to her position with Banana Republic, she has wholly failed to mitigate her damages, thus barring any monetary recovery in this case.

III. *Conclusion.*

Aikens' claims under the ADA are not cognizable because they are based on events that occurred prior to the effective date of the Act. Aikens' race discrimination claims are not actionable because they were not alleged in her original complaint or in any amendment or supplement to the complaint. Moreover, she has failed to adduce sufficient summary judgment evidence to establish a *prima facie* case of either handicap or race discrimination. Aikens' constructive discharge claim is without basis because she has failed to show that her working conditions were so intolerable that a reasonable person would have felt compelled to resign. Finally, Aikens is barred from recovering damages, as she has made no effort to obtain substantially equivalent employment after resigning from Banana Republic.

Accordingly, Banana Republic's motion for summary judgment is GRANTED. There exist no outstanding issues of material fact, and Banana Republic is entitled to judgment as a matter of law.