David L. TERRY, Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY
COMPANY, Defendant.

Civil Action No. 1:93–cv–2418–CC.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 18, 1996.

Michael D. Goodman, Barry Goodman, Goodman & Goodman, Atlanta, GA, for plaintiff.

### ORDER

COOPER, District Judge.

Pending before the Court is Motion of Defendant Norfolk Southern Railway Company For Summary Judgment. [24–1]

### BACKGROUND [1]

Plaintiff was hired by Defendant as a shop laborer in January 1974. In approximately

---

1. Unless otherwise indicated, the facts in this Order are taken exclusively from the portions of

Defendant's statement of material facts which

1978 Plaintiff began working as a conductor for Defendant. By February 1982, Plaintiff had been injured on the job three times. The injuries required multiple surgeries to Plaintiff's knee and a single surgery to Plaintiff's back. The surgery on Plaintiff's back involved implantation of Harrington rods, which are metal rods to support and hold up the spine. After Plaintiff's last injury, Plaintiff requested, and received, medical disability benefits from Defendant.

Dr. Exum Walker, the physician that recommended surgery to relieve Plaintiff's back problems, informed Plaintiff that he would not be able to return to work as a railroad conductor. In 1983 Plaintiff applied for, and after a hearing, began receiving social security disability benefits. Plaintiff continues to receive such benefits. In order to continue receiving social security benefits, Plaintiff has filled out questionnaires representing his medical condition has not improved. As recently as 1990, Plaintiff represented that, more often than not, he needs help putting on his shoes. When bathing, Plaintiff needs help washing his back.

Plaintiff describes the level of pain he constantly experiences in his back and leg as 10+ on a scale of 1 to 10. Nevertheless, Plaintiff asserts that since approximately 1987 he has been hiking, fishing, camping, hunting and scuba diving. He contends that his medical condition has changed since 1986 in that he subjectively feels he is able to handle the pain and make it his friend.

The parties dispute the level of prescribed drugs Plaintiff takes to relieve the pain. At a minimum, Plaintiff takes Percocet, a narcotic, from time to time for relief of the pain in his back and leg. Percocet can cause sedation and impaired mental functioning. Plaintiff is given thirty (30) Percocet tablets per month to use at his discretion. Information regarding Plaintiff's taking of such a drug is crucial to an informed medical diagnosis of Plaintiff's condition.

The rules, rates of pay and working conditions applicable to a railroad conductor working for Defendant are governed, in part, by a collective bargaining agreement between Defendant and the railroad conductors (the "Agreement"). The Agreement provides that once an employee is medically disqualified, he may apply to return to work only if improvement of the employee's health is verified in writing by a competent physician, and the employee requests another examination by a physician designated by Defendant. Following the examination, Defendant may return the employee to work, or reaffirm the disqualification. If the disqualification is reaffirmed the employee may notify the union and provide further written verification from his physician indicating he meets Defendant's standards for the position. The employee is entitled to request that a three-physician panel review his request to return to work. The conclusion of the panel is final, unless the employee's health later improves.

In accordance with the Agreement, Plaintiff initiated a return-to-work request on June 23, 1989. Plaintiff's disqualification was reaffirmed. Plaintiff's request for a three-physician panel was denied because Plaintiff's physician confirmed the existence of Harrington rods in Plaintiff's back. Defendant concluded that the existence of the Harrington rods automatically precluded Plaintiff from meeting Defendant's minimum medical standards for conductors which state that the conductor, "[m]ust have no prosthetic major joints . . ."

Defendant referred Plaintiff to another physician to provide another opinion. The physician concluded,

> I must admit that this man seems to be physically qualified to do almost any type of work, but I would be a little leery of his being able to perform heavy manual labor and particularly doubtful of his ability to swing off and on moving equipment.

Defendant did not approve Plaintiff to return to work.[2]

Plaintiff does not dispute, and which the Court deems relevant.

**2.** Plaintiff was evaluated by additional physicians in support of repeated subsequent return-to-work requests. Each of the requests were denied. Plaintiff told at least two of the physicians from whom he sought favorable opinions that he was not taking any prescribed medication.

Plaintiff then initiated the arbitral procedures required by the Railway Labor Act for all disputes under collective bargaining agreements. Pursuant to those procedures, the Public Law Board determined that a three-physician panel was not merited because Plaintiff had Harrington rods in his back and, therefore, failed to meet Defendant's minimum medical standards.

On February 8, 1990, Plaintiff filed a complaint with the Office of Federal Contract Compliance ("OFCCP"). Plaintiff charged Defendant with having violated the Rehabilitation Act of 1973 by denying him reinstatement and discriminating against him on the basis of his handicap. The OFCCP investigated Plaintiff's work and medical history and referred Plaintiff to an independent physician. The independent physician concluded that Defendant "would be at risk to have [Plaintiff] . . . put back in a high risk job." Based on its investigation the OFCCP determined that Defendant had not violated the Rehabilitation Act. Upon Plaintiff's request for reconsideration of the determination, the OFCCP's decision was affirmed.

In 1993, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff alleged Defendant violated the Americans with Disabilities Act ("ADA") by discriminating against him on the basis of his disability. Specifically, Plaintiff alleged Defendant denied him reinstatement with reasonable accommodation. Plaintiff sought to resume work with Defendant in the capacity of a conductor.

The conductor's job at Norfolk Southern Railway Company has evolved in the period since Plaintiff last worked. In the 1970's and early 1980's, the crew of a freight train consisted of at least an engineer, a conductor, a brakeman/trainman, and a switchman/flagman. By 1989 and 1990, a typical crew had an engineer, a conductor and a brakeman/trainman. Presently, a typical crew has only an engineer and a conductor. All manual labor on the two person freight trains must be performed by the conductor.

For example, a conductor must couple and uncouple cars, which includes pulling and lifting; a conductor must connect and disconnect pressurized air hoses, which are part of the train's brake system and run from one car to another under the couplers; a conductor must replace broken equipment, which may weigh up to 75 pounds; a conductor sometimes is required to walk the length of the train, which is up to two miles, and a conductor must climb, stoop, maintain balance, and remain alert.

Based on its investigation, the EEOC determined that Defendant did not violate the ADA. Plaintiff timely brought the above-styled action within ninety (90) days of the EEOC's issuance of a right-to-sue letter.

### DISCUSSION

Summary judgment is only proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Because the procedure deprives the parties of a trial on the issues, the court must be careful to ensure that only those claims for which there is no need for a factual determination as to any material fact are disposed of by summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In addition, a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. *Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988); *Tippens v. Celotex Corp.,* 805 F.2d 949, 953 (11th Cir.1986), *reh'g denied,* 815 F.2d 66 (11th Cir.1987). To survive a motion for summary judgment, the non-moving party need only present evidence from which the trier of fact might return a verdict in his favor. *Samples,* 846 F.2d at 1330. However, Rule 56, "[b]y its very terms, . . . provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct.

2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original).

The materiality of facts is governed by the substantive law. *Id.* at 248, 106 S.Ct. at 2510. A dispute is genuine if the evidence is such that the factual issues "may reasonably be resolved in favor of either party." *Id.* at 250, 106 S.Ct. at 2511.

Consideration of a summary judgment motion does not lessen the burden on the non-moving party. The non-moving party still bears the burden of coming forth with sufficient evidence on *each element* that must be proved. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990) (emphasis in original); *see Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53. "If on any part of the prima facie case there would be insufficient evidence to require submission of the case to the jury, [the court] must ... grant ... summary judgment for the defendant." *Earley*, 907 F.2d at 1080 (citations omitted). In *Earley*, the Eleventh Circuit further emphasized:

> The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. ... Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. ... In such circumstances, there can be no genuine issue of material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. ... If the evidence is *merely colorable*, or is *not significantly probative*, summary judgment may be granted.

*Id.* (emphasis in original) (citations omitted).

■ In ruling on a motion for summary judgment, a court "must evaluate the evidence in light of the proper standard of proof. In a discrimination case, the plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 (11th Cir.1987) (citations omitted). "Summary judgments for defendants are not rare in employment discrimination cases." *Earley*, 907 F.2d at 1081 (citations omitted).

■ In order to make out a *prima facie* claim under the ADA, Plaintiff must establish the following elements: (1) he suffers from a disability[3], (2) he is a qualified individual with a disability, (3) he was unlawfully discriminated against because of his disability. *Aikens v. Banana Republic, Inc.*, 877 F.Supp. 1031, 1036 (S.D.Tex.1995). Defendant challenges Plaintiff's ability to establish the second and third elements.

A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Defendant argues that Plaintiff cannot perform the essential functions of conductor without accommodation, and Plaintiff has failed to identify any reasonable accommodation that would allow him to perform the functions.

■ Moreover, Defendant argues that Plaintiff's claim, that he can perform the essential functions of conductor, is barred by equitable estoppel[4]. Equitable estoppel bars a party from taking inconsistent positions in order to reap the benefits of a position and, at the same time, avoid the corresponding obligations of that position. *DeShong v. Seaboard C.L.R.R.*, 737 F.2d 1520, 1522 (11th Cir.1984).

■ Defendant contends Plaintiff should be equitably estopped from claiming he can

---

**3.** For the purposes of establishing a *prima facie* case Plaintiff is deemed to have a disability if he shows Defendant perceived that he suffered from a disability at the time of the adverse employment action. 42 U.S.C. § 12102(2).

**4.** The Court finds that the Public Law Board award *does not collaterally estop Plaintiff's* entire claim under the ADA because the narrow determination by the board was that Plaintiff had Harrington rods in his back, and therefore, did not meet Defendant's minimum standards. The broader question before the Court, however, includes whether those standards are discriminatory. The issue at stake is not identical to the one alleged in the prior litigation.

perform the essential functions of the rigorous job of conductor, because he made an inconsistent representation to the Social Security Administration. Plaintiff indicated to the Social Security Administration that he is so severely and permanently disabled that he is unable to work. Plaintiff's representations to the Social Security Administration were certified and have been accepted as true. Plaintiff continues to receive social security benefits.

In several cases courts have held that an employee, who represents on a benefit application that he is disabled, is judicially estopped from arguing that he is qualified to perform the duties of the position involved. *McNemar v. The Disney Stores, Inc.,* 1995 WL 390051 (E.D.Pa.1995) (ADA termination claim against employer barred where plaintiff, who suffered from AIDS, and his physician, represented to Social Security Administration that he was totally and permanently disabled); *August v. Offices Unlimited, Inc.,* 981 F.2d 576 (1st Cir.1992); *Garcia–Paz v. Swift Textiles,* 873 F.Supp. 547, 554 (D.Kan. 1995); *Kennedy v. Applause, Inc.,* 1994 WL 740765 (C.D.Cal.1994); *Reigel v. Kaiser Foundation Health Plan of N.C.,* 859 F.Supp. 963, 967–70 (E.D.N.C.1994); *Muellner .v. Mars, Inc.,* 714 F.Supp. 351 (N.D.Ill. 1989); but see *Smith v. Dovenmuehle Mortg., Inc.,* 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994).

The Court finds that, under the circumstances of this case, Plaintiff is estopped from asserting he is a qualified individual with a disability. Plaintiff continuously has received social security benefits since 1983, and renewed his application for them as recently as 1990. Plaintiff not only receives benefits, but also specifically represented that, due to his physical disability, he often is unable to wash his back and put on his shoes, and only sometimes can he make his bed. As a matter of law, therefore, the Court determines that Plaintiff could not perform the essential functions of the job of conductor with Defendant.

The Court expressly notes, however, that it is conceivable there are circumstances under which a party would not be estopped from claiming he is a qualified individual with a disability merely because he represented he is disabled for the purposes of social security benefits. Thus, the key here is not that Plaintiff represented that he is disabled, even permanently so, or that he has received disability benefits, rather, it is the specific nature of the representations made by Plaintiff which clearly indicate that he is so severely disabled physically, that he can not work a rigorous job such as that of conductor.

Because the Court concludes Plaintiff did not make out a *prima facie* case of discrimination under the ADA, the Court will not rule on the merits of the defenses addressed in Defendant's motion.

### CONCLUSION

Motion of Defendant Norfolk Southern Railway Company For Summary Judgment is GRANTED. [24–1]