57 N.J. Super. 223 (1959)
154 A.2d 441
MELVIN S. EVANS AND JOHN R. NORWOOD, COMPLAINANTS-RESPONDENTS,
v.
BURT J. ROSS, TRADING AS HOLLY HOUSE, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1959.
Decided September 21, 1959.
*225 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Robert E. Gladden argued the cause for appellant (Messrs. Ross, Flowers and Gladden, attorneys).
Mr. Thomas P. Cook, Deputy Attorney General, argued the cause for respondents (Mr. David D. Furman, Attorney General, attorney; Mr. Cook, of counsel).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Melvin S. Evans and John R. Norwood filed complaints with the Division Against Discrimination, in the State Department of Education, charging Burt J. Ross, trading as Holly House, with violating the Law Against Discrimination (L. 1945, c. 169, as amended; N.J.S.A. 18:25-1 et seq.), and specifically N.J.S.A. *226 18:25-12(f), in that he refused to rent any banquet or meeting room facilities in Holly House to their organization, the Moorestown Civic Club, because it was an all-Negro group. Ross answered and by way of separate defenses alleged, among other things, that (1) although the dining room at Holly House was a place of public accommodation, the banquet and meeting rooms were not, but were private facilities for the use of such specific persons and groups as he might contract with; (2) the Division was without jurisdiction to hear the complaints; and (3) he had not committed any act of unlawful discrimination within the meaning of the statute. Following a full public hearing the Commissioner of Education filed a decision and order in which he found Ross guilty of discrimination, as charged, and ordering him "to cease and desist from discriminating against any and all persons and any and all groups in the rental of banquet and/or meeting facilities or in extending any other service of the Holly House on account of race, creed, color, or national origin." N.J.S.A. 18:25-17.
Ross thereupon appealed to the County Court. N.J.S.A. 18:25-21. The parties stipulated that the county judge should decide the factual situation upon the transcript taken below. The County Court affirmed the decision of the Commissioner. Ross thereupon appealed to this court. N.J.S.A. 18:25-23.
The complainants, representing the Moorestown Civic Club, went to Holly House on April 24, 1958 and inquired of Ross as to the possibility of having a banquet at his establishment on any Saturday in June. They explained that the club was an all-Negro organization. Ross told them there were no Saturdays available. They made like inquiry as to any Saturday in May, and then July and August. In each case Ross gave them the same answer. They told Ross that it appeared he did not care to rent his facilities to their group, and he said, "That's right." These allegations were established by uncontradicted evidence at the hearing; indeed, Ross admitted he told complainants *227 he did not wish to rent out his banquet rooms to a Negro group. He also admitted there were rooms that would have been available to other applicants. The Holly House reservation book showed that beginning with May 24, 1958 there was at least one room available every Saturday evening for the rest of the summer.
The Commissioner of Education found as a fact that the banquet and meeting room facilities of Holly House are operated as places of public accommodation and that Ross unlawfully refused to rent these facilities to the Moorestown Civic Club on account of its Negro membership. He also rejected the argument that the Division had no jurisdiction. The County Court came to the same conclusions.
The first contention on this appeal is that the Division had no jurisdiction to hear the complaints and to enforce those portions of the Law Against Discrimination which deal with public accommodations. The argument made is that under N.J.S.A. 18:25-6 the jurisdiction of the Division to hear complaints is limited to charges of discrimination in employment. Section 6 of the act provides:
"There is created in the State Department of Education a division to be known as `The Division Against Discrimination' with power to prevent and eliminate discrimination in employment against persons because of race, creed, color, national origin or ancestry or because of their liability for service in the armed forces of the United States, by employers, labor organizations, employment agencies or other persons and to take other actions against discrimination because of race, creed, color, national origin or ancestry or because of their liability for service in the armed forces of the United States, as herein provided; and the division created hereunder is given general jurisdiction and authority for such purposes." (Italics ours)
Although recognizing that the Law Against Discrimination has since 1945 been amended in many respects (of which more hereafter), appellant points out that section 6 has not been changed so as to enlarge the original jurisdiction of the Division. Pointing to the above italicized phrase, "as herein provided," he contends that the Legislature thereby specifically limited the jurisdiction of the Division *228 to the specific type of complaint set out in that section  discrimination in employment. The argument is transparently without merit.
The Law Against Discrimination, L. 1945, c. 169, originally applied only to discrimination in employment. Section 11 (N.J.S.A. 18:25-12), containing subparagraphs (a) through (e), pertained to employers, labor organizations and employment agencies, and persons aiding and abetting the doing of any acts forbidden under the law as promulgated. L. 1949, c. 11, extensively broadened the provisions of the act. Thus, section 4 (N.J.S.A. 18:25-4) was amended to provide that "All persons shall have the opportunity to obtain employment and obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation, without discrimination because of race, creed, color, national origin or ancestry * * *." Section 8 (N.J.S.A. 18:25-8) was amended to empower the Commissioner of Education to organize the Division Against Discrimination into two sections, the first dealing with complaints alleging discrimination in employment and the second with complaints alleging "other unlawful acts of discrimination." The 1949 law also contained a whole series of related amendments making other procedural sections apply to "unlawful discrimination" as well as "unlawful employment practice"  see, for example, sections 8, 9, 10, 11 and 14 of L. 1949, c. 11 (now N.J.S.A. 18:25-13, 14, 15, 17 and 21). Finally, section 11 of the original act (now N.J.S.A. 18:25-12) was amended by adding subparagraph (f), making it an unlawful discrimination "for any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof * * *." "Unlawful discrimination" is defined by N.J.S.A. 18:25-5(d) to include those types of discrimination, other than unlawful employment practices, prohibited by N.J.S.A. 18:25-12.
*229 Appellant cites Garifine v. Monmouth Park Jockey Club, 29 N.J. 47 (1959), in support of his argument that the Division was without jurisdiction, noting that the Supreme Court, in commenting on the 1945 act, said that the Division was created with power to eliminate employment discrimination. He fails to observe that the court went on to say that the 1949 amendments "extended the scope of L. 1945, c. 169, to include discriminations in places of public accommodation and amusement based on race, creed, color, national origin or ancestry * * *." 29 N.J., at page 59.
The interpretation of the statute contended for by appellant would render the 1949 amendments futile and abortive. Courts will not so construe a statute if that result can possibly be avoided, particularly where one must strain to arrive at such a construction. In construing an enactment we must give effect to the overriding plan or purpose of the Legislature as fairly expressed in its language. We avoid any interpretation that will render any part of the statute inoperative, superfluous or meaningless. O'Rourke v. Board of Review, 24 N.J. 607, 610-611 (1957).
There was no need to amend section 6 of the 1945 law because it already gave the Division the power to prevent and eliminate discrimination in employment, as well as "to take other actions against discrimination * * * as herein provided." The word "herein" plainly means "in this law." With the passage of the 1949 amendments the Division thereafter was empowered to take action against discrimination in places of public accommodation.
Appellant's second point is that the Holly House banquet and meeting rooms are not places of public accommodation within the meaning of the act. Holly House consists of a public dining room on one side of the main entrance hall and some five banquet or meeting rooms of varying size on the other, accommodating small and large groups. These rooms are regularly used by many different organizations for parent-teacher association meetings, boy scout meetings, fashion shows, funeral gatherings, union *230 meetings, religious services by Jewish and Catholic organizations, and other purposes. In most cases no service of food is involved. When food is ordered it is served from the same kitchen and by personnel under the same Holly House management. Receipts go into the same account as those from the main dining room. The availability of the rooms is advertised on highway billboards and by brochures. A typical example of billboard advertising is a sign on Route 130: "Dining-out luxury at stay-at-home prices, 9 miles ahead, Roos's Holly House Restaurant, South Jersey's largest restaurant, air conditioned, 6 banquet rooms."
N.J.S.A. 18:25-5(j) defines a place of public accommodation as including "any restaurant, eating house, or place where food is sold for consumption on the premises; * * * any auditorium, meeting place or public hall; * * *." As the County Court judge remarked, Holly House fits within either or both of these categories.
The banquet or meeting rooms at Holly House are just as much public accommodations within the meaning of the act as its main dining room. The evidence establishes that they are an integral part of the facilities offered by appellant to the public  physically, operationally, financially, and in respect to the general invitation extended. Appellant argues that the rooms can only be rented by private contract, arrived at after he has determined the use to which the desired room will be put, the size of the group involved, when the facility will be used, whether food will be served, and the like. This, he urges, establishes the banquet and meeting facilities as private rooms, rather than public accommodations. Under the facts of this case, as well as the statute, we perceive no adequate basis for such a distinction.
In construing the Law Against Discrimination courts must give prime consideration to the object of the Legislature and the evil it sought to remedy. New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 160 (1957). As the Attorney General observes, the situation or condition with which the Legislature intended *231 to deal in enacting the 1949 public accommodation amendments was essentially and obviously this: that an establishment which caters to the public, and by advertising and other forms of invitation induces patronage generally, cannot refuse to deal with members of the public who have accepted the invitation, because of their race, creed, color, national origin or ancestry. The law is designed to insure that all citizens of this State shall have equal rights as members of the public and not be subjected to the embarrassment and humiliation of being invited to an establishment, only to find its doors barred to them. Once a proprietor extends his invitation to the public he must treat all members of the public alike. The present case is just such a one as the law was expressly designed to cover.
Appellant cites cases arising under the civil rights statutes of other states, admittedly penal in nature or strictly construed. Our act, however, is not penal but remedial in nature, and by its very terms must be construed "fairly and justly with due regard to the interests of all parties" so as to accomplish its salutary purpose. N.J.S.A. 18:25-27. Accordingly, we find the out-of-state citations unpersuasive.
The Holly House banquet or meeting rooms are "private"  to use appellant's word  only in the sense that they can be hired for the exclusive use of a particular group or organization. They are still public accommodations, just as any private hotel room or private hospital room would be within the meaning of the law. See N.J.S.A. 18:25-5(j).
Finally, appellant claims that he did not commit an act of discrimination. He points to the fact that Negroes have been served in the public dining room of Holly House, and have attended meetings of organizations renting banquet or meeting rooms. His only objection is against an all-Negro group, and he urges that this is not the type of practice prohibited by the statute.
As we have already noted, not only were appellant's discriminatory acts proven without contradiction, but he himself admitted at the hearing that he told complainants he *232 did not wish to make the facilities available to Negroes. This evidence was coupled with proof that he had falsely stated to them that he had no rooms available for the times requested by them.
We find that discrimination was established beyond any reasonable doubt. As the Commissioner rightly observed, the act makes no distinction between individuals who come as individuals and those who come in groups, nor as to whether they are all of one race. The civil right which every person has to obtain the advantages and facilities of any place of public accommodation is conferred upon "all persons" by N.J.S.A. 18:25-4.
At the oral argument, as in his brief, appellant urged that there is an available remedy under the Civil Rights Act, N.J.S.A. 10:1-1 et seq., which provides that any person violating any provision of the act shall be subject to a penalty of not less than $100 nor more than $500 to be recovered in a civil action, with costs, for each and every violation, and shall also for every such violation be deemed guilty of a misdemeanor, and upon conviction thereof be subject to a fine of not more than $500 or imprisonment for not more than 90 days, or both. The 1949 amendments to the Law Against Discrimination were intended to combine into one law the substantive provisions of the Civil Rights Act and the existing Law Against Discrimination (1945). See the statement appended to Assembly Bill 65 (1949). The Law Against Discrimination provides a quick and effective method for suppressing discrimination, and the complainants are entitled to its protection. They may not be relegated to the more strictly construed provisions of the penal Civil Rights Act.
Affirmed.