896 F.Supp. 166 (1995)
D.B., Plaintiff,
v.
Howard BLOOM, D.D.S., and Madison Dental Centre, Defendants.
Civ. No. 93-2094.
United States District Court, D. New Jersey.
August 15, 1995.
*167 John V. Jacobi, Crummy, Del Deo, Dolan, Griffinger & Vecchione, a Professional Corporation, Newark, NJ, on behalf of the American Civil Liberties Union of New Jersey, for plaintiff.
Donald B. Mark, Law Office of Donald B. Mark, Stratford, NJ, for defendants (Withdrawn As Counsel).

FINDINGS OF FACT AND CONCLUSIONS OF LAW
BROTMAN, District Judge:

INTRODUCTION
This matter is before the court on plaintiff's motion for entry of default judgment *168 pursuant to Fed.R.Civ.P. 55(b)(2). For the reasons set forth below, plaintiff's motion is granted.

I. PROCEDURAL HISTORY
Plaintiff D.B.[1] filed a complaint in this matter on May 14, 1993, alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (the "ADA"), the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq. (the "NJLAD"), and the tort of intentional infliction of emotional distress. Plaintiff seeks compensatory and punitive damages, injunctive relief, and attorneys fees and costs. Defendants Dr. Bloom and Madison Dental Centre filed an answer on July 6, 1993. This court has jurisdiction over the claims by virtue of federal question jurisdiction and supplemental jurisdiction. 28 U.S.C. §§ 1331 and 1367(a), respectively.
United States Magistrate Judge Robert B. Kugler entered numerous discovery and scheduling Orders in this matter, but defendants refused to comply with such orders even as the court granted repeated extensions prolonging the discovery period for ten months. Having received no discovery by July 1994, plaintiff filed a motion to compel discovery, for sanctions pursuant to Fed. R.Civ.P. 37(b), and specifically, for an Order striking defendants' answer and defenses pursuant to Rule 37(b)(2)(C).
In a letter opinion resolving plaintiff's motion, dated August 29, 1994, Judge Kugler carefully discussed the six factors that the Third Circuit Court of Appeals, in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863 (3d Cir.1984), determined must be evaluated before default may be entered in an action. Letter Opinion, No. 93-2094, slip op. at pages 8-12 (D.N.J. August 29, 1994). The six Poulis factors are: 1) the extent of the party's personal responsibility; 2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; 3) a history of dilatoriness; 4) whether the conduct of the party or the attorney was willful or in bad faith; 5) the effectiveness of sanction other than dismissal; and 6) the meritoriousness of the claim or defense. Id. at 867. Judge Kugler correctly concluded that the factors weighed in plaintiff's favor, and Judge Kugler granted plaintiff's motion and struck defendants' answer and entered default as a sanction for defendants' wilful failure to comply with discovery. In addition, defendants' counsel, having been unable to maintain any contact with his clients, moved to be relieved as counsel. Judge Kugler deemed the motion to be granted upon the condition that defendants' counsel serve a copy of the letter opinion and order upon defendants at their last known addresses within twenty-one days of the order.
Plaintiff then moved for default judgment. Although provided with advance notice of the proof hearing on the motion held on February 7, 1995, defendants did not appear or otherwise respond.

II. FINDINGS OF FACT
1. Plaintiff D.B. is a resident of New Jersey who, in the fall of 1992, tested positive for the antibodies associated with HIV, the human immunodeficiency virus believed to be the causative agent of acquired immune deficiency syndrome ("AIDS"). (Transcript, 2/7/95 at 10).
2. Due to a car accident in August, 1992, D.B. suffered from a cracked tooth which caused pain and required dental treatment. (Tr. at 10-11).
3. D.B. decided to go to defendant Madison Dental Centre, having read a full page advertisement that appeared on the back of The Speedliner, a free publication distributed to mass transit passengers in the Philadelphia and South Jersey regions. (Tr. at 10).
4. Dr. Bloom, who practiced dentistry at and owned Madison Dental Centre located at 6500 Madison Ave., Pennsauken, New Jersey, first treated D.B. in November, 1992. D.B. returned to Dr. Bloom to have his cracked tooth extracted on December 1, 1992. (Tr. at 11).
*169 5. The preliminary work for the tooth extraction had been completed and D.B. was sitting in the dental chair prepped and ready to proceed, when a conflict arose over whether D.B.'s functional heart murmur necessitated the administration of general anesthesia. (Tr. at 11).
6. When D.B. and Dr. Bloom were unable to agree on the need for general anesthesia, they decided to consult D.B.'s physician on the matter. D.B.'s physician was unavailable so they spoke with the medical director, who asked D.B. for permission to inform Dr. Bloom of D.B.'s HIV status. D.B., who had informed only four people of his HIV status, was reluctant to share this information with Dr. Bloom whom D.B. perceived as not "trustworthy" nor able to "handle" the information. D.B. acquiesced in the medical director's request, however, and handed the phone over to Dr. Bloom in order for the physician to inform Dr. Bloom of D.B.'s HIV status. (Tr. at 12-14).
7. Dr. Bloom was subsequently refused further treatment solely due to his HIV status as evidenced by defendants' sudden change in behavior upon learning of D.B.'s status. Dr. Bloom's face "went totally blank" when he received the information, and he left the room for a minute or two. During those minutes, D.B. returned to the dental chair to await the extraction. Dr. Bloom returned, and in the presence of a dental assistant, told D.B. that he could no longer offer him services, and that he would refer him to a "special clinic for HIV," that is, someone who was "better suited to take care of [his] needs." (Tr. at 15-16).
8. As he left the examination room, D.B. overheard Dr. Bloom engaged in a conversation with a Madison Dental Centre record clerk and another person not employed by the Centre. D.B. testified that Dr. Bloom was describing how he felt embarrassed that he had to go through a situation like that, and that he could not provide D.B. with services. (Tr. at 16).
9. Instead of the promised referral to a particular clinic possessing some alleged specific expertise in handling dental patients infected with HIV, the receptionist referred him to Camcare, a facility that provides services to the medically indigent and mentally ill. D.B. objected, indicating that the referral was inappropriate and that he had insurance and was able to pay Madison Dental Centre. (Tr. at 17-18).
10. The refusal of treatment, the doctor's open discussion of his medical condition, and the inappropriate referral to another provider caused D.B. great pain and emotional trauma. D.B. had only revealed his HIV status to four people because he dreaded what he anticipated would be negative ramifications stemming from the disclosure of his HIV status. And, in fact, his fears were realized when defendants refused to provide D.B. with medical services once they learned of his HIV status. (Tr. at 15).
11. After leaving Madison Dental Centre, D.B. went home and cried. He was "extremely angry, [and] embarrassed beyond belief." (Tr. at 19). As a result of his experience at Madison Dental Centre, D.B.'s physical and emotional health suffered. He stopped eating and exercising, and his weight dropped from 155 to 126 pounds. His consumption of alcoholic beverages increased, and he resumed drug therapy for depression. He experienced suicidal urges, which manifested themselves in reckless driving, and dangerous, aggressive behavior in his work with inmates in state prisons. (Tr. at 20-21).
12. In addition, D.B. testified that the experience caused his relationship with his partner to end, strained his relationship with his roommates, and caused him to argue with co-workers. (Tr. at 20-21).
13. D.B.'s state of emotional distress continued for approximately two years. More recently, through psychological therapy and an HIV support group, he has begun to recover. Nonetheless, this traumatic experience has left him permanently scarred and "absolutely terrified" that others will react to his HIV status as defendants did. (Tr. at 22).

III. CONCLUSIONS OF LAW
1. Pursuant to Rule 55(b)(2), Fed. R.Civ.P., the court may enter judgment by default when a party has failed to plead or otherwise defend in the action. Although the *170 entry of a default judgment is an extreme sanction, the authority to do so is entrusted to the discretion of the trial court. Hoxworth v. Blinder, Robinson & Co., Inc., 980 F.2d 912, 919 (3d Cir.1992); Poulis v. State Farm and Casualty Co., 747 F.2d 863, 868 (3d Cir.1984). The court must be satisfied that the non-moving party has received notice of the motion and that the judgment and remedies applied for are justified by the pleadings and other information of record.[2]
2. Defendants in this matter were properly served notice of the motion for entry of default judgment, as evidenced by the Certification of Service filed by plaintiff.
3. The allegations of plaintiff's complaint and testimony, taken as true for the purposes of this motion,[3] set forth a prima facie case for discrimination under the ADA. The general rule of the ADA states: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). First, D.B. is, by virtue of his HIV status, a person with a disability.[4] Second, a dental services provider is a place of public accommodation by the terms of the ADA.[5] Since defendant Dr. Bloom owns defendant Madison Dental Centre which operates as a public accommodation, the statute applies. See Howe v. Hull, 873 F.Supp. 72, 77 (N.D.Ohio 1994) (hospital which operates as a public accommodation subject to the ADA and individual physician in hospital subject to personal liability under the ADA as well). Finally, plaintiff's pleadings and testimony conclusively establish that he was denied services and equal treatment by both defendants by virtue of his disability[6] in violation of 42 U.S.C. §§ 12182(b)(1)(A)(i) and (ii) and 28 C.F.R. §§ 36.202(a) and (b). See, generally, Morvant, supra.
4. The record in this matter similarly establishes the elements of a claim under the NJLAD. The NJLAD forbids "any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly *171 to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof. ..." NJLAD 10:5-12(f). All the provisions of the act shall be construed to prohibit any unlawful discrimination against any person who is or has been at any time handicapped. NJLAD 10:5-4.1. The three elements of an NJLAD claim are established. First, D.B. qualifies as handicapped due to his HIV infection.[7] Second, the Madison Dental Centre must be considered a public accommodation within the meaning of the NJLAD.[8] It has held itself out in an advertisement prominently displayed on the back cover of a free magazine as a health service provider which "caters to the public, and by advertising and other forms of invitation induces patronage generally." Evans v. Ross, 154 A.2d 441, 57 N.J.Super. 223, 231 (1959). According to Evans, the NJLAD was designed to "insure that all citizens of this State shall have equal rights as members of the public and not be subjected to the embarrassment and humiliation of being invited to an establishment, only to find its doors barred to them." Id. Third, plaintiff's pleadings and testimony conclusively establish that he was denied services and equal treatment by both defendants by virtue of his disability in violation of NJLAD 10:5-12(f).
5. Having found for plaintiff on his claims under the ADA and the NJLAD, the court need not reach his claim of intentional infliction of emotional distress. Even if liability were found under the tort of intentional infliction of emotional distress, his recovery would merely duplicate that which is available pursuant to the ADA and the NJLAD.[9]
6. For the reasons stated above, the court finds that judgment by default should be entered against defendants on plaintiff's claims under the ADA and the NJLAD.

Remedies
7. Defendants' violation of the ADA and the NJLAD may be remedied by the entry of equitable relief where appropriate. 42 U.S.C. § 12188(a); 28 C.F.R. § 36.504(a)(1); N.J.S.A. 10:5-13. Accordingly, the court orders defendants to 1) no longer discriminate against persons who are HIV-positive; 2) institute and maintain a policy of non-discrimination on the basis of HIV-positive status; and 3) post this policy prominently in defendants' waiting room.[10]
8. Compensatory and punitive damages may be awarded under plaintiff's state law claims. N.J.S.A. 10:5-13. See Levinson v. Prentice-Hall, Inc., 868 F.2d 558, 562 (3d Cir.1989) (recognizes that NJLAD allows for reasonable punitive damages in addition to recovery for actual losses). D.B. suffered actual injury in the form of "delay in receiving treatment for his cracked tooth, and continues to experience feelings of humiliation, shame, anger, helplessness, rejection and depression." (Complaint, ¶ 14). Furthermore, the facts of the record reveal that defendants willfully and intentionally disregarded D.B.'s rights, which justifies the award of punitive damages for the purpose of deterring future similar egregious conduct. Smith v. Wade, 461 U.S. 30, 48-49, 103 S.Ct. 1625, 1636-37, *172 75 L.Ed.2d 632 (1983) (standard for punitive damages).
The court finds defendants' actions to be particularly offensive in light of their status as licensed health care providers who ought to be aware of and practice universal precautions. In addition, defendants must recognize that such an experience could inhibit HIV-positive persons from seeking important medical services thus discouraging them from obtaining what they need even more than the average person  regular, careful health monitoring. In the best of circumstances, many people find receiving medical care, and dental care, in particular, to be an anxiety-producing experience. Certainly this is a case whereby D.B.'s experience of discrimination made receiving necessary medical services an even more traumatic ordeal. D.B. had already been treated once at this facility and returned expecting further treatment. Instead, while he was sitting in the dental chair, prepped with medical personnel present and ready to provide services, Dr. Bloom abruptly told him to leave and obtain services elsewhere due to his HIV status. Dr. Bloom then proceeded to further compound plaintiff's injuries by discussing highly confidential medical information with an employee and another person not employed at the Centre. The court finds that the significant harm suffered by plaintiff as a result of defendants' intentional acts justifies an award of $25,000 in compensation for plaintiff's pain, humiliation, and emotional distress, as well as an award of $25,000 in punitive damages. See Howe v. Hull, 873 F.Supp. 72, 74 (N.D.Ohio 1994) (jury awarded HIV-positive patient whom hospital refused treatment and inappropriately referred elsewhere $62,000 in compensatory damages and a total of $450,000 in punitive damages); Minnesota v. Clausen, 491 N.W.2d 662, 663 (Minn.Ct. of App.1992) (affirming award of $410,000 for mental anguish and suffering for refusal of dentist to treat HIV-positive patient, plus $5,000 civil penalty); United States v. Jack H. Castle, D.D.S., Inc., No. H93-3140 (S.D.Tx.1994), reprinted in 1994 AIDS Litigation Reporter 12602 (October 11, 1994) (Consent Order) (respondents agreed to payment of $80,000 in compensatory damages to dental patient allegedly denied services due to HIV-positive status, in addition to $20,000 in civil fines); Renee Allen v. Dr. Stanley Brottman, Case No. 9K-P-D-88-132330 (New York State Division of Human Rights, January 26, 1993) (dentist denied services to patient based on patient's sister's AIDS diagnosis, patient awarded $25,000 in compensatory damages); Moloney v. All County Transportation, Docket No. 91-216PA (New York City Commission on Human Rights, July 19, 1991) (damages of $15,000 awarded for invalid coach driver's refusal to assist HIV-positive patient).
9. Reasonable attorney's fees and costs may be awarded in this action pursuant to 42 U.S.C. § 12188(a)(1), 28 C.F.R. § 36.505, and N.J.S.A. 10:5-27.1. A careful review of the fee application reveals plaintiff's request for fees for time spent with the media regarding this matter. As a matter of law, this kind of activity attorneys generally do at their own expense. Gates v. Shinn, 60 F.3d 525, 1995 WL 346091, at *10 (9th Cir. June 9, 1995); see also United States ex rel. Taxpayers Against Fraud v. General Electric Co., 41 F.3d 1032, 1049 (6th Cir.1994); Proffitt v. Municipal Auth. of Borough of Morrisville, 716 F.Supp. 845, 851 (E.D.Pa. 1989), aff'd, 897 F.2d 523 (3d Cir.1990). Therefore, to reflect the 7.40 hours plaintiff's attorneys spent with the media, the court will reduce the requested amount of $32,881.18 by $913.57.[11] However, the court finds the remaining fees and costs requested to be reasonable. Plaintiff's counsel billed at the market rate and saved costs by utilizing attorneys with a lower billable rate per hour for the majority of the work. The fees and costs were well-documented with the work completed and hours spent clearly set forth. Therefore, having eliminated the charges referring to media relations, the court finds the fee application to be reasonable and absent *173 any objections by the adverse party,[12] awards plaintiff's attorney $31,967.61 for fees and costs.

ORDER FOR DEFAULT JUDGMENT
This matter having come before the court on plaintiff D.B.'s motion for entry of default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2);
This court having reviewed all submissions;
It appearing that a default was entered on August 26, 1994 against defendants Dr. Howard Bloom and Madison Dental Centre for willful failure to comply with discovery; and
The court having held a proof hearing on the motion for default judgment on February 7, 1995; and
For good cause shown;
IT IS on this 15th day of August, 1995 hereby:
ORDERED that plaintiff's motion is GRANTED and a judgment by default is ENTERED against defendants; and
IT IS FURTHER ORDERED that defendants shall:
a) no longer discriminate against persons who are HIV-positive;
b) institute and maintain a policy of non-discrimination on the basis of HIV-positive status;
c) post this policy prominently in defendants' waiting room;
d) pay plaintiff $25,000 in compensatory damages;
e) pay plaintiff $25,000 in punitive damages; and
f) pay $31,967.61 in plaintiff's reasonable attorneys fees and costs.
NOTES
[1] Due to the highly personal nature of this litigation, plaintiff appears only by initials in order to preserve his privacy.
[2] "[P]laintiff, notwithstanding defendant's default, only [can] obtain a judgment in accordance with the merits of the case...." 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2681 (2d ed. 1983). "[T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability." 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2688 (2d ed. 1983).
[3] "If the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2688 (2d ed. 1983).
[4] "Disability means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment.... The phrase physical or mental impairment includes ... HIV disease (whether symptomatic or asymptomatic)...." 28 C.F.R. § 36.104(1)(iii).
[5] "The following private entities are considered public accommodations ... if the operations of such entities affect commerce, ... a professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(f). See also United States v. Morvant, 1995 WL 131093 (E.D.La. March 22, 1995) (dental office constitutes a place of public accommodation).
[6] Defendants would have the court believe that they refused treatment not based on D.B.'s HIV-positive status, but "because of the plaintiff's dishonest and intentional misrepresentation of his medical history." (Answer, Second Affirmative Defense). This does not constitute a complete defense on the face of the pleadings. Defendants might argue that their acts were defensible because they attempted to refer D.B. based on a bona fide medical reason, such as a lack of specialized skills to properly treat the patient. However, this explanation is unworthy of credence and merely a pretext for discrimination because no specialized skills are required to treat patients who are HIV-positive. "As a general dentist, [defendant] had sufficient expertise and training to provide general dental care to persons with HIV or AIDS." Morvant, 1995 WL 131093 at *6. Therefore, no medically justified reason existed for defendants' refusal to treat D.B. Had defendants contacted any number of experts on HIV, they would have learned "that an HIV-positive individual may be safely treated in a private dental office which utilizes universal precautions." State of Minnesota v. Clausen, 491 N.W.2d 662, 667 (Minn.Ct.App.1992).
[7] One of the definitions of handicapped means "suffering from AIDS or HIV infection." NJLAD 10:5-5(q).
[8] A place of public accommodation includes "any dispensary, clinic or hospital." NJLAD 10:5-5(l).
[9] See Woolfolk v. Duncan, 872 F.Supp. 1381, 1391 (E.D.Pa.1995) (physician alleged to have provided HIV-positive patient with substandard care denied summary judgment on intentional infliction of emotional distress claim because court could not conclude as a matter of law that this behavior was not sufficiently extreme and outrageous); Miller v. Spicer, 822 F.Supp. 158, 169-70 (D.Del.1993) (physician who allegedly refused to treat patient whom he feared might have been HIV-positive denied summary judgment on claim of intentional infliction of emotional distress because court could not conclude that his actions were not extreme and outrageous).
[10] Plaintiff also requested that defendants undergo regular in-service training and education on HIV-related treatment issues to all professional and staff employed by or providing services for defendants for a period of three years from the entry of the Order. The court denies this extensive request due to the impracticability of court supervision, and in light of defendants' history of non-compliance throughout this case, such a request would most likely be a futile one.
[11] The court calculated this amount by multiplying the hours attorneys "JJ" and "EC" spent with the media, 2.60 and 4.80 hours respectively, by their hourly rate, $175.99 and $95.00 respectively, and then adding these two sums.
[12] It is not the court's role to reduce the amount of the award unless the adverse party raises objections to the fee request. Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990).