**Steve HERNANDEZ, Plaintiff,**

v.

**The PRUDENTIAL INSURANCE COMPANY OF AMERICA d/b/a Prudential Healthcare System of Tampa Bay, a mutual life insurance company, Defendant.**

**No. 96–1316–CIV–T–17C.**

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 23, 1997.

Christie D. Arkovich, Law Office of Christie D. Arkovich, Tampa, DL, for Plaintiff.

Donald B. Harden, Burton F. Dodd, Kenneth J. Barr, Fisher & Phillips, Atlanta, GA, Suzannne K. Bogdan, Fisher & Phillips, Ft. Lauderdale, FL, for Defendant.

### *ORDER*

KOVACHEVICH, Chief Judge.

This cause is before the Court on the following motion, memorandum, depositions, affidavits and responses:

1. Defendant, PRUDENTIAL INSURANCE COMPANY OF AMERICA's, (PRUDENTIAL) motion for summary judgment (Docket No. 19 ); memorandum of law in support of said motion with exhibits; reply to plaintiff's response to defendant's motion for summary judgement; and notice of inap-

plicability of plaintiff's supplemental authority;

2. Plaintiff, STEVE HERNANDEZ's, memorandum in opposition to defendant's motion for summary judgment with exhibits (Docket No. 3 5); response to defendant's motion for summary judgment; and notice of supplemental authority;

3. Depositions of STEVEN HERNANDEZ, LORETTA LOPEZ, JOHN MEYER, SUSAN OLDS, DALE ADRIANI, BERNADETTE FABER–GARZONE, EDMUND G. GRANT, M.D., DORRY NORRIS, M.D., TAMMY IRWIN, GEORGE ROHRMANN, and KIERAN J. QUINN;

4. Affidavits of BERNADETTE GARZONE, NANCY KUHLMAN, BERNADETTE GARZONE with exhibits, STEVE HERNANDEZ, and DEBORAH COUCH; and

5. Plaintiff's Charge of Discrimination and Affidavit provided to the U.S. Equal Employment Opportunity Commission (EEOC).

### STANDARD OF REVIEW

Summary judgment is appropriate where the record shows that no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(e). In ruling on a motion for summary judgment, the Court must review the facts in the light most favorable to the non-moving party and allow such party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 156–58, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Nevertheless, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### FACTS

For purposes of ruling on the pending motion for summary judgment only, the Court finds the following facts to be relevant to the resolution of said motion:

On November 1, 1993, plaintiff, STEVE HERNANDEZ, was hired by defendant, PRUDENTIAL, as a Member Services Representative. Plaintiff received numerous performance based awards and had a high productivity rate, often exceeding that of his co-workers. On January 14, 1995, plaintiff was recommended for a promotion and merit increase. Prior to the promotion becoming effective, Plaintiff was terminated; however, this termination was revoked after defendant, PRUDENTIAL, conducted an investigation and determined that the termination was improper. Plaintiff began working again on February 26, 1995.

After the investigation surrounding plaintiff's termination, plaintiff informed Ms. GARZONE, manager of provider relations, that he was infected with the Human Immuno-deficiency Virus (HIV). Subsequently, plaintiff's condition required him to take approved medical leave of absences. In August 1995, plaintiff began to request transfers to other assignments and positions which plaintiff deemed less stressful and more suitable to accommodate his frequent doctor appointments and health needs. In January 1996, after plaintiff filed a complaint with defendant's corporate office, plaintiff was permitted to begin work a half hour earlier each day. Plaintiff also sought a lateral transfer which was denied in January 1996.

Plaintiff asserts that his supervisors began to look unfavorably at his work, despite the fact that his productivity rate was higher than most of the other customer representatives. Plaintiff contends that his supervisors' actions forced him to file an internal complaint with the ethics department. Plaintiff states that it became increasingly difficult to obtain leave for medical reasons and that his overall treatment was different than other employees in similar positions.

In February 1996, plaintiff received an adverse performance evaluation. Plaintiff asserts that in light of the futility of his com-

plaints, the rapid decrease in his health, and the continuous harassment from his supervisors, plaintiff resigned from his position.

## I. Disability

 In order to establish a *prima facie* case under the Americans with Disabilities Act (ADA), plaintiff must prove that he is: (1) disabled, (2) can perform the essential functions of his job with or without reasonable accommodations, and (3) was terminated because of his disability. *Desai v. Tire Kingdom, Inc.*, 944 F.Supp. 876, 879 (M.D.Fla. 1996). A disability is (1) a physical or mental impairment that substantially limits one or more major life activities, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Similarly, under the Florida Civil Human Rights Act (FCHRA) the term handicap means "[a] person has a physical or mental impairment which substantially limits one or more major life activities, or he has a record of having, or is regarded as having, such physical or mental impairment." Fla. Stat. § 760.22

Defendant PRUDENTIAL contends that plaintiff has not demonstrated that he is disabled under either the ADA or FCHRA. Moreover, defendant argues that asymptomatic HIV does not constitute a *per se* disability under the Act, therefore, plaintiff must prove that his impairment substantially limits a major life activity. Plaintiff undoubtedly has a physical impairment,[1] however, the plain language of the statutes requires that the impairment substantially limit a major life activity. 42 U.S.C. § 12102(2)(A); Fla. Stat. § 760.22.

It is unsettled whether HIV and AIDS are *per se* disabilities. Some courts have determined that both of these conditions undeniably impact a major life activity and that the impact is substantial, therefore, no specific determination is necessary. *See D.B. v. Bloom, D.D.S., Madison Dental Centre*, 896 F.Supp. 166, 170 (D.N.J.1995) (stating that an individual by virtue of his HIV status is disabled under the ADA); *Hoepfl v. Barlow*, 906 F.Supp. 317, 319 n. 7 (.D.Va.1995) ("It is

now settled law that HIV-positive individuals are 'disabled' within the meaning of the ADA"); *Howe v. Hull*, 873 F.Supp. 72, 78 (N.D.Ohio 1994) ("AIDS and HIV infection are both disabilities within the meaning of ADA"); *Gonzales v. Garner Food Services, Inc.*, 855 F.Supp. 371, 374 n. 5 (N.D.Ga.1994); *United States v. Morvant*, 843 F.Supp. 1092, 1093–94 (E.D.La.1994). "Conditions such as AIDS, HIV, blindness, and deafness, *inter alia*, have been determined by the courts to be *per se* disabilities." *Anderson v. Gus Mayer Boston Store of Delaware*, 924 F.Supp. 763, 774–75 (E.D.Tex.1996) (footnotes omitted). "Because of the substantial limitations placed upon a person with AIDS (ability to procreate and engage in intimate sexual relationships) major life activities are hampered." *Id.* at 774 n. 24 (citing to Tracy S. Guice, *AIDS Discrimination in Employee Health Benefits*, 18 Law & Psychol. Rev. 377 (Spring 1994)). Furthermore, the Senate and House Labor Committees have recognized that HIV is a disability. *See* 1990 U.S.C.C.A.N. 267, 445–451; H.R.Rep. No. 101–485, 101st Cong., 2d Sess., pt 2, pp. 1–29 (1990) ("Persons infected with the Human Immunodeficiency Virus are considered to have an impairment that substantially limits a major life activity").

Other courts have found that the ADA requires a determination of whether a plaintiff's asymptomatic HIV substantially limits one or more of his major life activities. *See Abbott v. Bragdon*, 912 F.Supp. 580, 586–86 (D.Me.1995).

> Were we to hold that [the child] was disabled under the ADA, therefore, we would have to conclude that HIV-positive status is per se a disability. The plain language of the statute, which contemplates case-by-case determinations of whether a given impairment substantially limits a major life activity, whether an individual has a record of such a substantially limiting impairment, or whether an individual is being perceived as having such a substantially limiting impairment, simply would not permit this conclusion.

---

1. Defendant concedes for the purposes of this motion that a diagnosis of asymptomatic HIV

constitutes a physical impairment under the ADA pursuant to 28 C.F.R. § 35.104.

*Ennis v. National Ass'n of Business And Educational Radio, Inc.,* 53 F.3d 55, 60 (4th Cir.1995).

Although it is unclear whether HIV-positive status should be a *per se* disability under the ADA, this debate need not be resolved. An individual infected with the HIV virus can easily satisfy the "substantial impairment of major life activities" prong.

> AIDS is a devastating, communicable, fatal disease that attacks and destroys the body's immune system. It renders individuals "susceptible to a range of 'opportunistic' infections, malignancies, and other diseases which would not generally be life threatening to persons with normally functioning immune systems." AIDS also directly causes dementia and other disorders of the central nervous system. The term "AIDS," however, is considered obsolete in the sense that it describes only a later, end-stage of an epidemic disease more appropriately labeled "HIV infection." ...
> It is thought that virtually everyone infected with HIV will progress at some point to active disease; further, the prognosis for advanced stage HIV-infected patients is very poor. Although periods of survival vary considerably, no one has ever recovered from the disease, and there is as yet no effective vaccine or cure.

*Harris v. Thigpen,* 941 F.2d 1495, 1502–03 (11th Cir.1991) (citations and footnotes omitted).

Plaintiff argues that he is substantially limited in his ability to reproduce, procreate, fight off disease, and his ability to live. The regulations provide a nonexhaustive list to illustrate *major life activities:* "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). A "substantial limitation" of a major life activity is one which significantly restricts the conditions, manner or duration under which the major life activity can be performed as compared with the average person in the general population. 29 C.F.R. Section 1630.2(j).

"Reproduction, one of the most fundamental of human activities, must constitute a major life activity." *Abbott v. Bragdon,* 912 F.Supp. 580, 586 (D.Me.1995). The majority of courts have concluded that reproduction does constitute a major life activity. *See Id.* at 585–87; *Erickson v. Northeastern Illinois University,* 911 F.Supp. 316, 321 (N.D.Ill. 1995); *Pacourek v. Inland Steel Co.,* 858 F.Supp. 1393, 1404–05 (N.D.Ill.1994); *Doe v. Kohn Nast & Graf,* 862 F.Supp. 1310, 1320–21; *Doe v. Dist. of Columbia,* 796 F.Supp. 559, 568; *Cain v. Hyatt,* 734 F.Supp. 671, 679 (E.D.Pa.1990). Plaintiff asserts that he has wanted to have children since he was nineteen years old. *Hernandez Aff,* ¶ 30. In addition, DORRY NORRIS, M.D. testified that she discussed plaintiff's desire to father children and the health risks involved. *Dr. Norris Depo.* p. 58–60. Plaintiff and Dr. NORRIS discussed the possibility of a procedure that would eliminate HIV from the semen, but the doctor explained that the procedure does not eliminate all possibility of transmitting the disease and that there is a significant risk of transmitting HIV to a newborn and the mother. *Dr. Norris Depo.* p. 58–60; *Dr. Norris Aff.,* ¶ 14.

On the other hand, defendant argues that since plaintiff claims he wanted to father a child since he was nineteen, but did not discover he was HIV-positive until he was 33, and plaintiff did not take any steps to consummate his alleged desire to father a child, this demonstrates that his subsequent diagnosis of HIV-positive did not *substantially* limit this activity. In addition, defendant contends that plaintiff cannot demonstrate that his HIV condition substantially limited his ability to reproduce because plaintiff is a sexually active homosexual male, who during the relevant time period, was involved in an exclusively homosexual relationship. Contrary to defendant's arguments, plaintiff's homosexual relationship would not preclude him from fathering a child. Nor does the case law support the assumption that plaintiff would have to attempt or pursue the opportunity to father a child during the course of his employment. Evidence in the record is sufficient to permit a jury to find that plaintiff is substantially limited in the major life activity of reproduction, (based on his reluctance and present decision not to have children due to the risk of transmitting

HIV to his child and the likelihood that the child would be without a father in the future); therefore, this issue presents a fact question for the jury. *See Doe v. Kohn Nast & Graf,* 862 F.Supp. 1310, 1321 (E.D.Pa. 1994).

Moreover, plaintiff is substantially limited in the major life activity of "caring for one's self," which is specifically listed as an example of a major life activity. One of the central issues in this case is that plaintiff claims that defendant, PRUDENTIAL, failed to make reasonable accommodations because of his need for frequent doctor visits and desire of a less stressful position. Plaintiff is substantially limited in his ability to care for himself, equally as unfortunate, the rest of the world is substantially limited in its ability to care for someone infected with HIV.

The fact that plaintiff will need continual medical care demonstrates that he cannot care for himself.[2] Defendant contends that plaintiff has only suffered from one opportunistic infection seven (7) months after he resigned and plaintiff's own physician believes that plaintiff is capable of living much longer than one (1) year. Nevertheless, a life threatening infection or impending death is not a prerequisite to finding an individual disabled under the ADA. The quality and duration of plaintiff's life have been diminished because of his HIV-positive status.[3] "Several courts have also held that HIV-infected individuals qualify as 'handicapped individuals' under the Rehabilitation Act even though they display no outward manifestations of disease because the HIV virus impairs multiple body systems, including the heroic, lymphatic and reproductive systems, and by its biological effects and the fear it inspires in others, clearly limits those infected in major life activities." *Austin v. Pennsylvania Dept. of Corrections,* 876 F.Supp. 1437, 1465 (E.D.Pa.1995). Impairments, such as HIV infection, are inherently substantially limiting. 29 C.F.R. § 1630.2(j). Accordingly, plaintiff can demonstrate that he has a physical impairment that substantially limits one or more of his major life activities.

## II. Reasonable Accommodations

■ The purpose of the ADA is to eliminate discrimination against individuals with disabilities. 42 U.S.C. § 12101. "The obligation to make reasonable accommodation is a form of non-discrimination. It applies to all employment decisions and to the job application process." 29 C.F.R. § 1630.9. The ADA imposes on employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in an undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A). Employer obligations under the ADA do not arise until the employer becomes aware of "known physical or mental limitations of an otherwise qualified individual with a disability." *Technical Assistance Manual on the Employment Provisions of the Americans with Disability Act,* p. III–7. Generally, the employee must make the employer aware that he or she is disabled and that accommodation is required. *Id.* Defendant contends that plaintiff did not disclose that he was HIV-positive to Ms. IRWIN or Ms. ADRIANI at the time he made the request to change his work schedule; therefore, he could not have requested the change to accommodate the fact that he was HIV-positive. Defendant argues, that as a result of plaintiff's failure to disclose his condition, defendant was under no legal obligation to comply with his requests.

■ In contrast, plaintiff contends that defendant had, at least, constructive knowledge of plaintiff's disability and that his requests to change his position and alter his work schedule were related to his medical condition. Plaintiff has provided evidence, by way of a telephone log entry, made by Ms. COUCH, which pertains to plaintiff's request for more time off the phones and to be

---

**2.** In fact, plaintiff now has AIDS. *Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment* pg. 11.

**3.** Plaintiff was diagnosed with HIV, Stage A2 during the period from July 26, 1994 to August 20, 1996. From January 1995 to January 1996, plaintiff complained of incapacitating headaches, swollen glands, persistent cough, shortness of breath, fever, abdominal pains, diarrhea, vomiting, nausea, fatigue, and weight loss. *Dr. Norris Aff,* ¶ 5, 6.

transferred to the provider services position. The note states "EE has requested accommodations for headaches that prevent him from answering phones in order to complete documents." *Hernandez Aff. Ex. "E"*. Another entry made the next day explains "As we discussed, Steve informed me, his supervisor and manager that he has been experiencing headaches and that this affects his efficiency in documenting his calls." In addition, Ms. GARZONE, who knew of plaintiff's HIV status during this time frame, testified that she was in constant contact with human resources specifically to address plaintiff's health and work circumstances. *Garzone Depo.* p. 160–63. Plaintiff asserts that he made his requests through Ms. IRWIN and Ms. ADRIANI and he asked them to speak with Ms. GARZONE concerning her "special knowledge" of his situation to assist them in evaluating his requests. Plaintiff claims that both Ms. IRWIN and Ms. ADRIANI were aware of plaintiff's extensive medical leave. In her deposition, Ms. GARZONE admits that she instructed her supervisors to approve all medical leave for plaintiff and for Ms. IRWIN to work with Ms. GARZONE on any requests plaintiff had. *Garzone Depo.* pp. 161–62. "An employer knows an employee has a disability when the employee tells the employer about his condition, or when the employer otherwise becomes aware of the condition, such as through a third party or by observation." *Schmidt v. Safeway Inc.*, 864 F.Supp. 991, 997 (D.Or.1994). In Ms. IRWIN's deposition, she explains that plaintiff complained of headaches related to work and that the human resources department was informed of plaintiff's complaint. *Ms. Irwin Depo.* p. 20–22.

Plaintiff asserts that he specifically requested to work an earlier shift and to be transferred to a less stressful position when it became vacant. *Hernandez Aff.* ¶¶ 13–4, 16–7, 27. Reassignment to a vacant position is one of the listed "reasonable accommodations" identified within the ADA. 42 U.S.C. § 12111(9)(B). Plaintiff's job performance deteriorated considerably after making his requests. *Hernandez Aff.* ¶ 16. In addition, Ms. GARZONE admits to having concerns that plaintiff's medical condition affected his job performance as a Member Services Representative. *Kuhlman Aff.* ¶ 12.

Plaintiff was temporarily reassigned to the Provider Services position which he sought and believed it to be less stressful. Ms. LOPEZ, one of defendant's other employees, testified that the Provider Services position required less documentation and that plaintiff was more than qualified for the position. *Lope Aff.* ¶ 3; *Lope Depo.*, pp. 11–13. Defendant alleges that plaintiff did not adequately ask for accommodations due to his medical condition, nevertheless, PRUDENTIAL attempted to accommodate plaintiff's work schedule. There are questions remaining regarding the particular accommodations available to plaintiff and the undue hardship associated with plaintiff's requests. Consequently, the parties' arguments raise genuine issues as to defendant's knowledge of plaintiff's HIV-positive status and the availability of reasonable accommodations.

### III. Constructive Discharge

■ Defendant also argues that plaintiff can not demonstrate that he was constructively discharged from his Member Services Position. Conversely, plaintiff claims that he was constructively discharged because his supervisors' harassment became intolerable. Moreover, plaintiff asserts that his supervisors retaliated against him for filing an internal ethics complaint regarding disability discrimination. Furthermore, plaintiff argues that the stress he endured because his supervisor forced him to take the next customer call before he was finished documenting the previous call constitutes actionable harassment. *Plaintiff Depo.*, Ex. 3, p. 5.

In order to prove that he was constructively discharged, plaintiff must prove that his working conditions were so intolerable that a reasonable person in his position would be compelled to resign. *See Kilgore v. Thompson & Brock Management, Inc.*, 93 F.3d 752, 754 (11th Cir.1996). Moreover, an employer must have been given sufficient time to remedy the situation for an employee to successfully assert that he was constructively discharged. *Id.* Plaintiff asserts that he could not get any satisfaction from defendant after several complaints. Plaintiff ar-

gues that when he complained to Ms. GAR-ZONE that he was being treated differently than his co-workers, she dismissed his concerns as being those of a "hyper-sensitive" employee. Plaintiff claims that he was forced to resign because his health was deteriorating and because his working environment did not improve after several complaints to his supervisors, managers, and the internal ethics department. Moreover, plaintiff asserts that defendant failed to investigate the facts alleged in his formal complaint.

Plaintiff asserts that his troubles began when he disclosed that he was HIV-positive. He explains that initially he had a very good relationship with Ms. GARZONE and this was the reason he told her of his condition. Plaintiff attests that prior to his disclosing his HIV status Ms. GARZONE encouraged him to improve his skills and to take on more responsibility. Plaintiff claims that he was given the opportunity to take classes along with other opportunities within the company. However, plaintiff claims he noticed a change in Ms. GARZONE's attitude after he disclosed that he was HIV-positive and the opportunities and encouragement were no longer forthcoming. Plaintiff claims that he began to experience severe headaches which had a negative impact on his job performance.[4] Plaintiff explains that his vision would momentarily blackout and he experienced difficulties in documenting his customer's calls. Plaintiff discussed his headaches with his immediate supervisor, Ms. IRWIN, and explained that his physician believed the headaches to be work related. These concerns were communicated to human resources.

Plaintiff began to make requests for the job vacancy which was to become available after Ms. WHITEHEAD was leaving PRU-DENTIAL. This was a job that plaintiff viewed as less stressful with working hours which were better suited to his needs. The job became available in October 1995, and Ms. IRWIN was to speak with Ms. GAR-ZONE about the possibility of plaintiff being transferred. During this time, plaintiff maintains that he received unwarranted negative job evaluations. Plaintiff claims that he received comments which were more critical of his job performance statistics than those of his co-workers. In addition, plaintiff claims that his co-workers would receive praise for high call volumes, whereas he did not, even though his call volume was higher.

Plaintiff states that he also requested other accommodations including reassignment to an earlier shift. Plaintiff asserts several months passed before his shift change request was partially granted. Between the time of the shift change request and it being partially granted, plaintiff attests that his performance deteriorated due to his severe headaches. Plaintiff contends that he continued to complain to his supervisors that he required more time to document his calls, but he was being constantly yelled at to keep taking calls, notwithstanding his complaints and the fact that he had the highest rate of handling calls in the department. This situation was partially resolved when Ms. GAR-ZONE instructed Ms. IRWIN and Ms. ADRIANI to stop yelling for plaintiff to answer the next call. Plaintiff maintains that his performance improved and his call volume remained high. Plaintiff claims that he requested to be reassigned to the Provider position a second time in the fall of 1995 and that he had the opportunity to perform the duties of that position temporarily. Another candidate was selected for the position in January 1996.

In addition, plaintiff explains that he had always met defendant's request for medical information except when Ms. COUCH, defendant's human resources employee, began to inquire into his future employability. Plaintiff contends that, on numerous occasions, Ms. COUCH expressed to him that he should be out on disability leave rather than continuing to work. Plaintiff spoke with defendant's representatives after he filed his ethics complaint, however, his situation did not improve. In addition, plaintiff expressed the difficulties he was having with his supervisors on several occasions. The various problems were addressed by Ms. IRWIN and Ms. GARZONE; however, plaintiff asserts that

4. Plaintiff had been diagnosed with chronic daily headache syndrome.

there was no resolution of the disparate treatment.

Plaintiff also argues that his health was in jeopardy; therefore, he can show that he was constructively discharged. Dr. NORRIS attests that she discussed plaintiff's stressful working environment with him and has the opinion that plaintiff's employment with defendant was an underlying cause to significant stress in plaintiff's life. *Dr. Norris Depo.* p. 55–56. In addition, plaintiff's clinical social worker told plaintiff that he should quit his job with defendant because the job was too stressful for him. Plaintiff's doctor states that stress reduction is very important to the longevity and quality of life of a person infected with HIV. *Dr. Norris. Aff,* ¶ 13.

Plaintiff also asserts that his supervisor advised him that his co-workers and some customers had complained about his excessive coughing and sneezing. Subsequently, plaintiff told Ms. GARZONE that he had developed a hernia because he had attempted to suppress his sneezing. Plaintiff contends that his supervisors and manager deliberately ignored his complaints and his health continued to deteriorate. This course of events took place over several months, and plaintiff argues that defendant's pattern of discrimination and retaliation undisputably demonstrates that he was constructively discharged.

Admittedly, every job has its frustrations and disapointments and plaintiff was not guaranteed a stress free working environment. Nevertheless, the working environment illustrated by plaintiff's evidence in conjunction with his terminal illness and declining health may be sufficient to present a case that he was constructively discharged. Failure to accommodate an individual with a disability, after repeated requests, tends to show the deliberateness on the part of defendant. Plaintiff has also offered testimony that he was singled out by his supervisors to answer the incoming calls as opposed to his co-workers. *Ms. Lopez* Depo., p. 26–38. Upon considering the substantial amount of testimony submitted by both parties and the arguments raised in their respective memorandum, the Court finds that plaintiff has provided sufficient evidence to permit a ra-

tional trier of fact to find that defendant willfully created working conditions so unbearable that a reasonable person in plaintiff's shoes would have felt compelled to resign.

## IV. EEOC Charge

Finally, defendant argues that plaintiff's claims in his Complaint, which were not previously alleged in his EEOC charge, are barred as outside the scope of his EEOC charge, except where the acts are "like or reasonably related to" the allegations contained in the charge or if the acts "could reasonably be expected to grow out of the investigation of the pending EEOC charges." This Court finds that each of plaintiff's allegations within his Complaint and testimony arise out of the same kind and areas of discrimination alleged in his EEOC charge and affidavit. Plaintiff, without the benefit of an attorney, alleged that he was discriminated against because he was HIV-positive and that defendant failed to accommodate his requests for reasonable accommodations in violation of the ADA. Plaintiff attempted to recite specific instances of retaliation and discrimination and provided specific names. Although plaintiff did not name every particular individual which allegedly discriminated against him or every instance, defendant certainly had notice of the kind and areas of plaintiff's claims. Plaintiff describes the particular accommodations he sought and the people he believed were involved in the decision making process. In addition, plaintiff alleged that he believed that his internal complaint with defendant's ethic's department may have been the reason for the discriminatory treatment he received. Furthermore, plaintiff specifically alleged that he had been discriminated against on the basis of his HIV status. Consequently, plaintiff's claims are not barred.

## V. Conclusion

Based on the foregoing, defendant, PRUDENTIAL's, motion for summary judgment is denied. Plaintiff has presented evidence which shows that he had a physical impairment that substantially limited one ore more of his major life activities. There is consid-

erable dispute concerning defendant's knowledge of plaintiff's disability and defendant's action taken to reasonably accommodate plaintiff. In addition, a reasonable jury could find that plaintiff, who was infected with HIV and whose health was deteriorating in the face of a hostile working environment was compelled to resign. Plaintiff's EEOC documents describe the same kinds of conduct complained of and sufficiently placed defendant on notice. All other arguments advanced by defendant, PRUDENTIAL, which were not specifically addressed herein are rejected as without merit and unworthy of discussion. Accordingly, it is

**ORDERED** that defendant, PRUDENTIAL's, motion for summary judgment (Docket No. 19) be **DENIED.**